Civil action to enjoin the defendants from certain alleged unlawful and wrongful practices.
The material allegations upon which the plaintiffs have come into equity and asked for injunctive relief are contained in the following paragraphs of the complaint:
"First. That the individual complainants above named are residents and citizens of the State of North Carolina, and are all engaged in doing work for the printing houses above named (771) in the city of Raleigh, N.C.
"Second. That the printing houses above named are all corporations, organized under the laws of the State of North Carolina, with their principal places of business in the city of Raleigh, N.C. with the exception of M. J. Carroll Son, which is a copartnership, engaged in the printing business in the city of Raleigh, N.C.
"Third. That the Raleigh Typographical Union, the Raleigh Printers Pressmen's Union, and Raleigh Bookbinders Union are labor unions, with headquarters in the city of Raleigh, N.C. and the individual defendants above named are officers and members of said unions.
"Fourth. The individual complainants above named, in behalf of themselves and all other employees of the several printing houses above named, respectfully show unto the court:
"(1) That the labor unions above named, and their officers, members, and associates above named, have entered into a conspiracy to drive these individual complainants from their positions as employees of the several printing houses above named, and to make it impossible for these complainants to work and live in peace in the city of Raleigh while they are engaged in their present employment.
"(2) That these individual complainants have done the defendants *Page 825 
no wrong, and the said defendants have no grievance of any kind against these complainants. Some time in May, 1921, the unions above named demanded of the printing houses above named (which were then running as closed shops) that the number of hours for a week's work be reduced from forty-eight to forty-four. Upon the refusal of the printing companies to accede to this demand, the members of the several labor unions above named quit work and went on what is popularly known as a `strike.' The printing companies offered in writing to submit all differences between themselves and their employees and the unions to an impartial board of arbitration, but this proposition was summarily rejected by the unions. Thereupon, the printing companies gave notice that they would be compelled to run their shops with whatever labor they might be able to obtain, whether the laborers belonged to a printers' union or not, but also gave notice that the jobs of all former employees would be open to them if they returned within a given time. The defendants above named refused to return to work, and have since then been making war on the printing houses and their employees.
"(3) That in pursuance of the plan, purpose, and conspiracy mentioned in subsection 1 above, the defendants have devised and are executing a systematic course of espionage, annoyance, intimidation, threats, abuse, and insults, which are intended to make, are calculated to make, and are making the lives of these complainants and all other employees of the several printing houses above mentioned miserable, intolerable, and unendurable, and unless the defendants are compelled to desist from such conduct (772) these complainants will be forced to give up their jobs and become objects of charity or else leave the city of Raleigh and seek employment elsewhere, and these complainants allege that they are informed and believe that it is well-nigh impossible for one who loses his job to obtain another in the present economic condition of the country.
"(4) In pursuance of said plan, purpose, and conspiracy the said defendants (a) gather in large numbers around the places of business where complainants are employed, and when complainants finish their day's work and emerge from their places of employment, the defendants indulge in threatening gestures, insulting jeers and hisses, and in many ways annoy, disturb, humiliate, and put in fear these complainants. (b) After complainants leave their several places of employment the defendants constantly `shadow' them. As soon as complainants leave their work, two or more of the defendants will trail them wherever they go. On the streets, in the stores, to their homes, to their work, in the day, in the night, always and everywhere they are pursued and persecuted by these defendants, *Page 826 
sometimes with abusive language, sometimes with threats, sometimes in such numbers as to cause complainants to fear for their lives. (c) The defendants, whenever and wherever they can find one or more of these complainants, surround them and by words and gestures humiliate them and put them in fear. (d) The said defendants constantly and systematically call these complainants insulting names, such as rats, scabs, runts, bowery bums, and other epithets calculated to humiliate and distress, and which do humiliate and distress these complainants, and have a tendency to bring on breaches of the peace, and but for the forbearance of these complainants bloodshed and probable loss of life would result. (e) Said defendants are constantly and systematically threatening these complainants by saying in their presence: `We'll get them yet.' `There are plenty of us to do it.' `They had better not let us catch them walking home.' `We will break his damn neck.' `If this thing goes on, I will be in the penitentiary soon,' meaning that they would perpetrate some crime against these complainants.(f) The young girls above mentioned as complainants are not free from the insult and abuse above set forth, but have been subjected by the defendants to all sorts of embarrassment and humiliation. As they pass along the streets they are jeered and hissed and scraped at and called `kitty-cat.' In the drug stores they are sneered at and called cats. In the picture shows they are disturbed and annoyed. They are yelled at by defendants when they are a block away. They are shadowed and pursued as they pass along the streets, and unless they are afforded protection they will be compelled to leave the city of Raleigh.
"Fifth. This course of conduct has been so persistently (773) and relentlessly pursued by the defendants that already more than one hundred employees of the printing houses above named have been literally driven from their work and been forced to leave the city.
"Sixth. These individual complainants have no object or purpose in bringing this action other than to secure for themselves and all their associates the right to work and live in peace, as free American citizens, desirous of the privilege of doing an honest day's work for a fair day's pay, and to this end they invoke the protection of the law.
"Seventh. The printing houses above named complain and allege:
"(1) That they have read the complaint of their employees, and from observation and reliable information they know the same to be true.
"(2) That the defendants above named have planned and conspired *Page 827 
to destroy the business of these printing companies for no other reason than that they decline to accede to the unreasonable and unrighteous demands of the labor unions and are now exercising the right of every American citizen to run their business on the American plan and to give employment to any man who applies for the same, this right being odious to and utterly denied by the defendants herein.
"(3) In furtherance of their said plan, purpose, and conspiracy to utterly destroy the business of these complainants, the defendants have gathered in large numbers in front of and near the places of business of these complainants, have used threatening words and gestures, have threatened to kill the officers and relatives and employees of these complainants, have pursued and taunted and hissed and jerred the employees of these complainants, and have endeavored to render burdensome and intolerable the life of every man and woman who dares to work in the employ of these complainants.
"(4) In further pursuance of said plan, purpose, and conspiracy to utterly destroy the business of these complainants, the said defendants have induced and bribed many of the employees of complainants to break their contracts that they have made to work for these complainants.
"(5) In further pursuance of said plan, purpose, and conspiracy to destroy the business of these complainants, the defendants have literally driven, by threats, annoyances, pursuits, and a relentless policy of `hell-hacking,' more than one hundred employees of these complainants from their jobs and away from the city of Raleigh.
"The complainants have this day commenced a civil action against the defendants in the Superior Court of Wake County for the purpose of obtaining a perpetual injunction, and summons has been issued therein.
"Wherefore, these complainants pray the court that an injunction be issued against the labor unions above named and against all their officers, members, aiders, abettors and associates, compelling them to desist from indulging in any of the conduct (774) above set forth, and to leave these complainants free to work and to carry on their business without molestation or annoyance of any kind."
The foregoing having been duly verified and used as an affidavit in the cause, his Honor, Cranmer, J., issued a temporary restraining order returnable before his Honor, Bond, J., in the city of Raleigh on 3 September, 1921. Upon the hearing, the defendants filed several motions to dismiss, and demurred upon the ground of a misjoinder of both parties and causes, and further, that the complaint *Page 828 
did not state facts sufficient to constitute a cause of action. All motions to dismiss and the demurrer were overruled; whereupon a large number of affidavits were filed by both sides; and, after a full consideration of the evidence, his Honor continued the temporary restraining order until the final hearing. From this ruling the defendants excepted, and appealed.
Some serious and weighty questions of law are presented by the demurrer and the several motions filed in the cause; but we deem it unnecessary to pass upon them now, as we are convinced, from a perusal of the record, that the evidence adduced and offered on the hearing was not sufficient to warrant a continuance of the injunction. It will, therefore, be dissolved without prejudice to the rights of any of the parties.
Error.
Cited: Citizens Co. v. Typo. Union, 187 N.C. 51.