THE CITIZENS COMPANY v. ASHEVILLE TYPOGRAPHICAL UNION, No. 263; FRANK J. TORLAY, AND OTHERS.

(Filed 22 January, 1924.)

**1. Injunctions—Actions—Associations—Unincorporated Companies.**

An unincorporated company or association of workmen is not, as such, subject to be sued or the object of injunctive relief.

**2. Same—Employer and Employee—Complaint — Demurrer — Questions for Jury—Trials.**

The individual members of a labor organization may ordinarily combine in their efforts, by peaceful persuasion and picketing, to induce others to quit their employment by uniting with them in ceasing to work for employers, whether corporations or individuals; but the employers and employees have relative rights, the one to the services and the other to render services, free from coercion, intimidation, or other unlawful or threatening influences; and where the complaint states a definite cause of action against individual members of an unincorporated labor organization, a demurrer admits the truth of the relevant and pertinent allegations, and thereupon a temporary injunction issued upon due notice to show cause should be continued to the hearing, upon the merits of the cause, for the finding of the facts by the jury.

CLARK, C. J., concurring opinion; HOKE, J., concurring opinion; STACY and ADAMS, JJ., concurring in the opinion of the Court and the concurring opinion of HOKE, J.

RESTRAINING ORDER, heard before *McElroy, J.,* at chambers. From BUNCOMBE, November Term, 1923. Appeal by plaintiff from order vacating restraining order.

Civil action. The facts essential for a decision of this case are as follows:

The plaintiff, a corporation, brought an action against the above-named defendants, Asheville Typographical Union, No. 263, and the other defendants personally. The return on the summons by the sheriff is as follows: "Served 30 October, 1923, by delivering a true and correct copy of the within summons and restraining order to W. J. Beacham, secretary and treasurer of the Asheville Typographical Union, and to each of the defendants named in this action."

The complaint of plaintiff is as follows:

"The plaintiff, complaining of the defendants, and each and every one of them, says:

"1. That The Citizens Company is a corporation, created by and existing under the laws of the State of North Carolina, with its principal office and place of business in the city of Asheville, in the said State, and, at the time hereinafter mentioned, was, and still is, engaged in the

business of printing and publishing a daily newspaper in the city of Asheville, of general circulation in said city and in the State of North Carolina, and known as *The Asheville Citizen* and *The Sunday Citizen*.

"2. That Frank J. Torlay is the organizer of the International Typographical Union, and, shortly before the time of the matters herein complained of, came to the city of Asheville for the purpose of advising his codefendants as to calling and conducting a strike, and, as the plaintiff is informed and believes, has advised, encouraged and procured the commission of the unlawful acts hereinafter alleged.

"3. That Asheville Typographical Union, No. 263, is a labor union, composed of members whose avocation is that of printers.

"4. That W. C. Burt, Harry V. Johnson, Irl T. Bell, James B. Felmet, J. J. Freeman, E. B. Dickinson, J. S. Curry, W. S. Scott, T. A. Luther, Clyde Carscadden, W. J. Beacham, J. B. Battley, J. D. Dillon, P. A. Harris, George W. White, Charles E. Mace, O. H. Deal, W. R. Shook, W. L. Van Wagener, Joseph Hamilton, Z. A. Creighton, G. A. Warlick, Leo R. Palmer, H. L. Beatty, John B. May, L. L. Wolfe, C. C. Rogers, Thomas J. Kennedy, W. S. Meroney, W. A. Sandelson, G. E. McKamey, W. M. Garrett, W. B. Shoor, J. M. Bowers, Monroe Landreth, J. A. Calloway, H. W. Hogoboom, H. N. Townsend, Foy Slagle, R. D. Pethel, George L. Herman, S. J. Lawrence, and A. J. Carey are officers and members of said Asheville Typographical Union, No. 263.

"5. That J. C. Sams is an apprentice, who is working as such, in order to qualify for carrying on the business of a printer.

"6. That the plaintiff, in carrying on its business, hereinafter mentioned, employed and still employs about fifty men and women, and of these a large number are printers and proofreaders.

"7. That the plaintiff has done the defendants no wrong, and the defendants have no grievance of any kind against the plaintiff."

Sections 8, 9, 10, 11, 12, and 13 of the complaint are set forth in the opinion.

"14. The plaintiff has this day commenced a civil action against the defendants in the Superior Court of Buncombe County, N. C., for the purpose of obtaining a perpetual injunction, and a summons has been issued herein.

"15. Wherefore, the plaintiff prays the court that an injunction be issued against the defendants, and each of them, and all other aiders, abettors, and associates, compelling them to cease from indulging in any of the conduct above set forth, to leave the plaintiff free to carry on its business in its own way, without molestation or annoyance of any kind from the defendants."

CITIZENS CO. *v.* TYPOGRAPHICAL UNION.

The following restraining order was issued:

"This cause coming on. to be heard before his Honor, P. A. McElroy, Judge of the Superior Court for the Nineteenth Judicial District, on motion of the plaintiff for an order requiring the defendants to show cause, if any cause they have, why the plaintiff is not entitled to the relief demanded in its complaint; and the court being of the opinion that the defendants should be required to show cause, and that in the meantime they should be enjoined, restrained and forbidden from further unlawful interference with the property, business and employees of the plaintiff.

"It is now, on motion, ordered, adjudged and decreed that the defendants, and each of them, show cause before the undersigned judge at his chambers in Asheville, on Saturday, 17 November, 1923, at 10 o'clock a. m., why the injunction herein applied for should not be continued until the final hearing of this action.

"And that in the meantime the defendants, and each of them, and all other persons, are hereby restrained and enjoined from in any way or manner whatsoever interfering with the plaintiff's business or employees, by threats, personal injury, intimidation, suggestion of danger, or threats of violence of any kind, interfering with, hindering, obstructing or stopping any person engaged in the employ of the plaintiff in connection with its business in the city of Asheville or elsewhere, and from interfering, by violence or threats of violence in any manner, with any person desiring to be employed by the plaintiff in or about its place of business, and from inducing or attempting to compel or induce, by threats, intimidation, force or violence, or putting in fear, or suggestions of danger, any of the employees of the plaintiff or persons seeking employment with it, so as to cause them to refuse to perform any of their duties as employees of the plaintiff; and from preventing any person, by threats, intimidation, force or violence, or suggestions of danger or violence, from entering into the employ of said plaintiff; and from protecting, aiding or assisting any person or persons in committing any of said acts; and from assembling, loitering or congregating about or in the proximity of the place of business of the plaintiff for the purpose of doing or aiding or encouraging others in doing any of said unlawful or forbidden acts or things, and from picketing or maintaining at or near the premises of the plaintiff any picket or pickets, and from passing through, over or upon the private alley in the rear of the plaintiff's place of business, and from doing any acts or things whatsoever in furtherance of any conspiracy or combination among themselves, or any of them, to obstruct or interfere with the plaintiff or its business, agents or employees in the free and unrestricted control and operation of its plant and property and in conducting its business, and

from entering upon the grounds and premises of the plaintiff without first obtaining its consent, and from injuring or destroying any of the property of the plaintiff.

"The clerk will issue this order, upon plaintiff giving bond in sum of $5,000 in favor of the defendants and conditioned according to statute."

An order was made, continuing hearing and restraining order from 17 November to 24 November.

The case came on for hearing on 24 November, 1923, and the following judgment was rendered:

"This cause coming on to be heard before his Honor, P. A. McElroy, judge presiding, at this term, upon the complaint, answer and evidence offered by the respective parties in support of their claims and contentions, and at the close of all of the evidence the defendants having demurred *ore tenus* on the ground that the complaint does not state facts sufficient to constitute a cause of action, and to move to dismiss said action on that ground; and after argument of counsel, the court stated in open court that he was of the opinion that the restraining order should be continued to the final hearing if the complaint states facts sufficient to constitute a cause of action for injunctive relief, but that he was further of the opinion that the complaint did not state facts sufficient to constitute a cause of action for injunctive relief, and would dissolve the injunction heretofore issued in this cause for that reason, but would allow said injunction to remain in full force and effect until the appeal could be heard in the Supreme Court, provided the transcript would be docketed at this term of said Court, and on further condition that the plaintiff should execute a bond in the sum of $7,500, conditioned as required by chapter 58 of the Public Laws of 1921.

"It is now, on motion, ordered, adjudged and decreed that the restraining order issued herein and dated 30 October, 1923, returnable on 17 November, 1923, be and the same is hereby dissolved.

"Thereupon, plaintiff in open court having prayed an appeal to the Supreme Court from the foregoing order and judgment, and the court finding that an injunction is the principal relief sought by the plaintiff, and upon all of the facts in the case, said injunction should be continued and remain in full force and effect until said appeal has been finally disposed of; and it is ordered by the court that, upon the filing by the plaintiff in the office of the clerk of the Superior Court, entitled as in this cause, a written undertaking with sufficient sureties, in the sum of $7,500, approved by the clerk of the court and conditioned as required by said statute, that said restraining order hereinbefore issued and dissolved shall remain in force and effect pending the said appeal of plaintiff to the Supreme Court of North Carolina and until the hearing and determination thereof.

"It is understood and agreed that this appeal shall be perfected, docketed and heard in the Supreme Court during the week for hearing appeals from the Nineteenth Judicial District, present term, unless the same. is continued on motion of the defendants or on motion of the Supreme Court. Should the appeal be not heard by reason of the motion. of the plaintiff, then the restraining order hereinbefore dissolved and continued herein shall be dissolved.

"It is further ordered that if the Supreme Court shall hold that the complaint states facts sufficient to entitle the plaintiff to injunctive relief, that said restraining order hereinbefore issued shall be continued until the final hearing.

"It is further ordered that the summons, complaint, judgment, and appeal entries shall constitute the record to the Supreme Court."

To the foregoing judgment plaintiff appealed, and assigned as error:

"1. The court ruled, held and adjudged that the complaint does not state facts sufficient to constitute a cause of action.

"2. The court ruled, held and adjudged that the complaint does not state facts sufficient to constitute a cause of action for the issuance of an injunction.

"3. The court ruled, held and adjudged that the facts alleged in the complaint, and admitted to be true by demurrer, are not sufficient to warrant the issuance of an injunction.

"4. The court ruled, held and adjudged that, upon the facts alleged in the complaint and admitted to be true by demurrer, the injunction should be dissolved.

"5. The court signed the judgment, as appears in the record."

*Jones, Williams & Jones and Mark W. Brown for plaintiff.*
*Gallatin Roberts, George Pennell, and J. W. Haynes for defendants.*

CLARKSON, J. The defendants demurred to the complaint *ore tenus* on the ground that it did not set forth a cause of action; that, admitting all the facts alleged in the complaint to be true, as a matter of law, the plaintiff had no cause of action, and the temporary restraining order was properly dissolved by the court below. There is no allegation in the complaint that the Asheville Typographical Union is a corporation, and it is not a natural person. It is an unincorporated association and cannot be sued.

In *Tucker v. Eatough,* individually and as agent for the United States Textile Workers of America, an unincorporated association, 186 N. C., 509, *Clark, C. J.,* said: "If, contrary to common law, an action could be brought without authority of a statute against an unincorporated body, it would be permissible for any person to bring an action

CITIZENS CO. *v.* TYPOGRAPHICAL UNION.

against the Confederate Veterans Association, or the American Legion, or the League of Women Voters, or any other unorganized body, upon an allegation that one of their members had committed the libel or other legal wrong against the person bringing the action. It certainly cannot be necessary to discuss further the proposition that, the United Textile Workers of America not being a legal entity, and there being no statute authorizing them to be sued, that the action was properly dismissed as to them."

This principle is well settled in this State. *Nelson v. Relief Department,* 147 N. C., 104; *Kerr v. Hicks,* 154 N. C., 268. The Yale Law Journal of February, 1924, has an interesting article (by Wesley A. Sturges) citing numerous authorities. It says: "The cases are remarkably in accord that, in the absence of enabling statute, an unincorporated association cannot sue or be sued in the common or association name." (Added, since opinion was written, by consent of the Court.) We think the court below was correct in dissolving the restraining order against the Asheville Typographical Union, No. 263, but not so against the individuals sued.

In the case of *Tucker v. Eatough, supra, Clark, C. J.,* further said: "The defendant, Eatough, is liable for any libel that he may be proven to have issued, and any individuals or corporations who aided and abetted him in issuing a libel can be made parties defendant, but not an unincorporated body of men."

In the instant case the plaintiff has brought suit against forty-five individuals. They have been served with summons, and the plaintiff in the complaint alleges (and for the purpose of this suit it is admitted by the defendants) that it is engaged in the business of printing and publishing a daily newspaper in the city of Asheville, of general circulation in said city and in the State, and known as *The Asheville Citizen* and *The Sunday Citizen.* That the defendant Frank J. Torlay is the organizer of the International Typographical Union and came to Asheville for the purpose of advising his codefendants as to calling and conducting a strike.

*Sherwood, J.,* in the case of *Clothing Co. v. Watson,* 168 Mo., 150, says: "If these defendants are not permitted to tell the story of their wrong, or, if you please, their supposed wrongs, by word of mouth or with pen or print, and to endeavor to persuade others to aid them by all peaceable means, in securing redress of such wrongs, what becomes of free speech and what of personal liberty?" Every person has the liberty of working for whom he pleases. The complaint alleges "That on or about 16 October, 1923, and subsequent thereto, the defendants, with malice and absence of lawful excuse,

"(a) Performed and have executed organized picketing, accompanied by threats, intimidation and violence towards persons employed or seeking employment at the place of business of the plaintiff; and

"(b) Have done actual injury to said employees and the plaintiff in an effort to cause said employees to breach their contracts with the plaintiff and to compel the plaintiff to discharge said employees, through intimidation; and,

"(c) Pursuant to said conspiracy, have advised and are executing a systematic course of espionage, annoyance, intimidation, threats, abuse, and insults, which are intended to make, or calculated to make, and are making the lives of said employees miserable, intolerable, and unendurable; and,

"(d) Unless the defendants are compelled to desist from such conduct, said employees will be forced by intimidation to abandon their contracts with the plaintiff and quit working for the plaintiff, and the plaintiff will be unable to carry on its business; and,

"(e) In pursuance of said conspiracy, plan and purpose, the defendants gather, and have gathered, in large numbers around and about the place of business of the plaintiff, and when said employees are entering said place of business to perform their work, or are emerging and have emerged therefrom after the day's work, the defendants indulge in threatening gestures, insulting jeers and hisses, using abusive, insulting, vile and profane language when addressing said employees, and in many ways annoy, disturb, humiliate, and put said employees in fear; and

"(f) Defendants also are guilty of acts of violence in throwing bricks and other missiles into, upon, and against the building in which the plaintiff carries on its business; and

"(g) Have made threats of great bodily harm and to kill said employees if they continue in the employment of the plaintiff or remain in the city of Asheville; and,

"(h) While said employees are away from the place of employment, the defendants constantly shadow them, following them on the streets, in the restaurants and stores, and to their homes, to their work, in the day, in the night; always and everywhere they are pursued and persecuted by the defendants, sometimes in such numbers as to cause said employees to fear for their lives; and

"(i) Frequently surround said employees whenever and wherever they can find one or more of them, and, by words and gestures, humiliate them and put them in fear; and

"(j) Constantly and systematically call said employees insulting names, such as 'rats,' 'scabs,' 'runts,' 'bowery bums,' and other epithets calculated to humiliate and distress, and which do humiliate and distress said employees and have a tendency to bring on breaches of the peace; and,

"(k) But for the forbearance of said employees, bloodshed and probable loss of life would have occurred; and

"(l) Use of approbrious epithets and insulting language in addressing those of said employees who are ladies, and, while in the presence of said ladies, have used profane and indecent language, all with like purpose and intent; and

"(m) Defendants are constantly and systematically threatening, and have constantly and systematically threatened, said employees by saying in their presence, 'We will get you yet,' and 'We will mop up with you,' and 'You had better leave Asheville or you will be killed,' and 'If you come out again you will be carried back a corpse'; and

"(n) Planned and conspired to destroy the business of the plaintiff for no other reason than that it declined to accede to the unreasonable and unrightful demands of the defendants; and,

"(o) In further pursuance of said plan, purpose and conspiracy to utterly destroy the business of the plaintiff, solely because of the malice and without any lawful excuse, the said defendants have induced many of the employees of the plaintiff to break their contracts that they have made with the plaintiff to work for the plaintiff, and to quit work for the plaintiff; and

"(p) Defendants are still engaged in the acts herein complained of, and threaten to continue the commission of said acts, to the irreparable damage and injury of the plaintiff; . . . unless the defendants are restrained and enjoined, the plaintiff will be irreparably damaged, . . . if not destroyed; and

"(q) That by reason of the said acts of the defendants the plaintiff has no adequate remedy at law."

As we understand the law to be, any individual or group of individuals have a right to organize and use all peaceful means to see that their rights and liberties, as they conceive or believe them to be, are protected, and their idea and endeavor for betterment and uplift are carried into effect. Justice should be done them in their calling or avocation in life. Freedom of conscience, freedom of speech, free writing, and freedom of action are the fundamentals of our government, subject to well-known exceptions as to abuse of these privileges. This right belongs to all individuals and groups—to all sorts and conditions of men alike. We should have no special class or favored few in our government, either of capital or labor. Any individual or group of individuals have a right to work for whom they please, either individually or collectively, and to contract in any manner they see fit and proper. Ordinarily, any individual or group have a right to quit work when he or they see fit, and, by peaceable means, use their influence and argument with other individuals and groups from filling or taking their

places. The quitting work by individuals or combination must be peaceful, and their conduct in persuasion of others must be peaceful. No individual or group of individuals who have these rights can infringe on the lawful rights of others. No individual or group of individuals, in carrying out their idea of right and justice as they consider them to be, can resort to any illegal means to accomplish their purpose — violence, assault, unlawful conspiracy, trespass, or any other actionable wrong. The success of all endeavor for uplift and betterment is lasting and permanent when founded on law and order in its accomplishment. In the adjustment of differences the ideal principle is the "Golden Rule": "And as ye would that men should do to you, do ye also to them likewise." Organized labor, or labor organizations, are not unlawful; they are no more unlawful than any organization or combination of farmers or manufacturers, or any organization or group of lawyers or doctors.

In the case of *S. v. Van Pelt,* 136 N. C., 664, *Connor, J.,* said :. "We would not be misunderstood. Capital, either in the form of money or other property, or in the form of skill, experience, intelligence and strength, may combine for lawful purpose. When in either form, or under whatever guise it seeks or conspires to effectuate its purpose, however lawful, by means of violence to person or property, or by fraud or other criminal means, or when by such means it conspires to prevent any person from conducting his own business in his own way, or from employing such persons as he may prefer, or by preventing any person from being employed at such wages or upon such terms as he may prefer, the courts will be prompt to declare and firm to administer the law to punish the guilty and protect the injured."

Labor is human capital. It is the bone and sinew of all industry. Without it material things would crumble and go to waste. The toiler and breadwinner carries out the ideal "In the sweat of thy face shalt thou eat bread." There should be no strife between capital and labor if it can possibly be avoided or prevented. The world is big enough for all, but if strife should come, and the relation of employer and employee cease, it must be peaceful. They have their respective rights under the law. This is orderly government.

In the instant case, we do not finally pass on the facts. Their probative value is for another tribunal. For the purposes of this action, they are admitted to be true. Do the allegations of the complaint entitle plaintiff to have the restraining order issued continued to the hearing as to the persons named as defendants in the action? After a thorough consideration of the entire matter, we think they do, subject to certain modifications. We have listened to the able arguments of the attorneys for plaintiff and defendants and examined carefully their well-prepared

briefs. We think the allegations in the present case go far beyond the facts alleged in the case of *Van Pelt, supra.* The admitted facts by the demurrer *ore tenus* for a decision of this case are different from the case of *McGinnis v. Typo. Union,* 182 N. C., 770. In the *McGinnis case* nothing unlawful was admitted, and every allegation of actionable wrong denied (which appears from the record of the case in the clerk's office). In that case "All motions to dismiss and the demurrer were overruled; *whereupon a large number of affidavits were filed by both sides* (italics ours); and, after a full consideration of the evidence, his Honor continued the temporary restraining order until the final hearing. From this ruling the defendants excepted and appealed." The opinion *per curiam* was as follows: "Some serious and weighty questions of law are presented by the demurrer and the several motions filed in the cause; but we deem it unnecessary to pass upon them now, as we are convinced from a perusal of the record that the evidence adduced and offered on the hearing was not sufficient to warrant a continuance of the injunction. It will, therefore, be dissolved without prejudice to the rights of the parties."

The complaint in this cause alleges, with certainty and definiteness, much that is unlawful—continuous trespass, conspiracy, assault, etc. (which is admitted by the demurrer). There are sufficient allegations and specific facts stated that are definite and certain enough to continue the restraining order against the individual defendants to the hearing, subject to certain modifications. The defendants have a legal right to have a reasonable number for peaceful picketing, but this cannot be attended by any disorder, intimidation or obstruction, but only by observation, watching and persuasion.

The U. S. Supreme Court, in *American Steel Foundries v. Tri-City Council et al.,* 257 U. S., 204, says: "How far may men go in persuasion and communication and still not violate the rights of those whom they would influence? In going to and from work, men have a right to as free a passage without obstruction as the streets afford, consistent with the right of others to enjoy the same privilege. We are a social people, and the accosting by one of another in an inoffensive way, and an offer by one to communicate and discuss information with a view to influencing the other's action, are not regarded as aggression or a violation of the other's rights. If, however, the offer is declined, as it may rightfully be, then persistence, importunity, following and dogging become unjustifiable annoyance and obstruction which is likely soon to savor of intimidation. From all of this the person sought to be influenced has a right to be free, and his employer has a right to have him free."

In *Tise v. Whitaker-Harvey,* 144 N. C., 510, *Hoke, J.,* said: "It is the rule with us that in actions of this character, the main purpose of which is to obtain a permanent injunction, if the evidence raises serious question as to the existence of facts which make for plaintiff's right, and sufficient to establish it, that a preliminary restraining order will be continued to the hearing. *Hyatt v. DeHart,* 140 N. C., 270; *Harrington v. Rawls,* 131 N. C., 39; *Whitaker v. Hill,* 96 N. C., 2; *Marshall v. Comrs.,* 89 N. C., 103." *Cab Co. v. Creasman,* 185 N. C., 551; *Parks v. Comrs.,* 186 N. C., 490.

The exceptions of plaintiff have been considered on the demurrer *ore tenus* of defendants to the complaint. The judgment of the court below dissolving the restraining order against the Asheville Typographical Union, No. 263, is affirmed. As against the individuals set out in the complaint, the judgment is reversed and modified in accordance with this opinion.

The restraining order under the judgment of the court below is continued against the individual defendants to the hearing and modified in accordance with this opinion.

Affirmed as to the Asheville Typographical Union, No. 263.

Reversed and modified as to the individuals, Frank J. Torlay and others.

CLARK, C. J., concurs that the action was properly dismissed as to the Asheville Typographical Union because it is an unincorporated association and cannot be sued, *Tucker v. Eatough,* 186 N. C., 509; and as to individuals who are parties defendant, is of opinion that as to those matters which are not based upon violence and which are alleged in the complaint herein in the identical language which was used in *McGinnis v. Typographical Union,* 182 N. C., 770, at pp. 771, 772 and 773, the injunction should be dissolved. These matters were held in that case to be "not sufficient to warrant a continuance of the injunction. It will, therefore, be dissolved without prejudice to any of the parties." The same ruling that was made in that case will apply to the allegations in this that are identical or in substance the same for it would be unjust to the defendants to continue the injunction in this case as to such matters.

The parties in this case have a legal right, by "peaceful picketing" and by persuasion, to induce others not to accept employment with the plaintiffs, and as to those matters, the ruling of Judge McElroy should be upheld.

As to the allegations that go beyond those in the *McGinnis case,* and which allege violence and personal intimidation, the injunction should be continued because it is an interference with the rights of those who

CITIZENS CO. *v.* TYPOGRAPHICAL UNION.

may seek employment. Such right is not interfered with by peaceful picketing or persuasion or like allegations not based upon violence. As to the other matters, only, the injunction should be continued until upon a hearing of the facts it is determined which of the defendants, if any, have committed such illegal acts, and to that extent the judgment of his Honor should be modified so as to continue the injunction in force as to such alleged acts of violence, or whatever may be equivalent thereto, and in all other respects it should be dissolved in accordance with the ruling in the *McGinnis case.*

This also applies to the appeal in *Asheville Times Co. v. Typographical Union et als., post,* 157.

HOKE, J., concurring: I concur in the disposition of the present appeal by which, as to the individual defendants, the restraining order is continued to the hearing. The individual defendants have demurred to the complaint, and thereby admitted the facts pertinent to the inquiry, and from these facts, stated in the complaint with precision and definiteness, it appears that for several weeks prior to the institution of the suit the defendants, as individuals and as members of a typographical union, having combined together for that end, have been engaged in a systematic and deliberate course of unlawful intimidation and violence towards plaintiff and its employees, with the view and purpose of interrupting and destroying the lawful prosecution of the plaintiff's business at Asheville, N. C., and that they will succeed in their unlawful purpose unless restrained, etc. In such case, if the courts may not and do not interfere by appropriate and orderly process for the protection of plaintiff and its employees, in my estimate, the rights of private ownership of property and the peaceful pursuit of one's lawful occupation guaranteed in the constitutions of both State and Nation have become meaningless phrases, and government by law will have utterly failed in its purpose. In *McGinnis v. Typographical Union,* 182 N. C., 770-774, the cause was heard and determined on the evidence and affidavits offered, and the sufficiency of the allegations of the complaint were not passed upon or determined. So considered, the Court was of opinion that upon the entire evidence the question of the unlawfulness of defendants' conduct was too much in doubt to permit of the continuance of a restraining order in the case, but no such perplexity is presented in this record, where defendants have filed no affidavits in denial of plaintiff's complaint but have expressly admitted the unlawfulness of their conduct, the unlawfulness of their purpose, and that there is every probability that they will succeed in such purpose unless prevented by process of the court. In the recent case of *Tucker v. Eatough,* 186 N. C., 505, the Court has held that, under the

law as it at present exists in this State, an unincorporated association, as such, cannot be sued, but as to the other defendants served with process, I am of opinion, as stated, that the restraining order should be continued against them to the hearing as individuals and as members of the Typographical Union, or in any other capacity in which they may act or profess to act in violation of plaintiff's rights of person or property and in breach of the State's peace.

STACY and ADAMS, JJ., concur in the opinion of the Court and in the concurring opinion of ASSOCIATE JUSTICE HOKE.