C. T. HALLMAN v. THE WOOD, WIRE & METAL LATHERS' INTERNATIONAL UNION AND WM. J. McSORLEY, TERRY FORD, GRADY C. KILPATRICK, D. E. HENRY, B. L. HENRY, A. W. SWANN, R. F. GLEASON AND A. B. SMITH, INDIVIDUALLY, AND FOR AND ON BEHALF OF THEMSELVES AND ALL OTHER MEMBERS OF THE WOOD, WIRE & METAL LATHERS' INTERNATIONAL UNION.

(Filed 14 June, 1941.)

**1. Actions § 1d—**

   An unincorporated labor union is without capacity to sue or be sued in the name of the association, since in law it has no legal entity, and there being no statutory provisions enabling it to sue or be sued as an association. Ch. 24, Public Laws 1933, ch. 182, Public Laws 1933; C. S., 457, 483 (4), apply only to suits by or against mutual benefit associations on certificates or policies of insurance.

**2. Process § 7—**

    Attempted service of process in any way upon an unincorporated labor union is void, since such association has no legal entity and may not sue or be sued in the name of the association.

STACY, C. J., BARNHILL and WINBORNE, JJ., concur in result.

APPEAL by defendant, the Wood, Wire & Metal Lathers' International Union, from *Johnston, Special Judge,* at February, 1941, Extra Term, of MECKLENBURG.   Reversed.

This is a civil action, setting forth two causes of action, charging actionable wrong, brought by plaintiff against defendants.   In a long, detailed complaint, setting forth the wrongs done by defendants to plaintiff, it is alleged by plaintiff:

"2. That the Wood, Wire & Metal Lathers' International Union, hereinafter referred to as the International Union, is a voluntary unincorporated association, consisting of several thousand members, and has a recognized group name, with headquarters in Cleveland, Ohio.

    .        .        .        .        .        .        .

"33. That, when said defendants caused the plaintiff to be black-listed as a lathing contractor, as aforesaid, said defendants knew that the plaintiff had been given the sub-contract to perform the lathing work on the Chavis Heights Housing Project; and that the acts and conduct of said defendants were done with full knowledge upon the part of the defendants that said acts would result in the termination of the sub-contract between said Kirkland and the plaintiff and would cause substantial loss and great injury and damage to the plaintiff.

"34. That, by reason of the termination of said sub-contract between said Kirkland and the plaintiff, plaintiff was damaged in the sum of $3,000.

"35. That the damage to the plaintiff, as herein set forth, was due, caused and occasioned by, and followed as a direct and proximate result of, the acts and conduct of the International Union and of William J. McSorley, Terry Ford, Grady C. Kilpatrick, D. E. Henry and B. L. Henry, as hereinbefore set forth, and in having the plaintiff black-listed as a lathing contractor and in causing said W. C. Kirkland to be notified thereof.

"36. That the wilful, wanton and malicious acts of the defendants in calling the strike referred to in the first cause of action herein and in black-listing the plaintiff, as a lathing contractor, as referred to in the second cause of action herein, have become well known among building contractors; that, as a direct and proximate result of said wilful, wanton and malicious acts, plaintiff has been unable to procure several other lathing sub-contracts which he otherwise could and would have procured at a profit to himself if it had not been for the wilful, wanton and malicious acts of the defendants in calling said strike and having the

plaintiff black-listed as a lathing contractor and in notifying various contractors that plaintiff had been black-listed as a lathing contractor and that the International Union would not permit its members to work for plaintiff, as a lathing contractor, as hereinbefore set out.

"37. That, by reason of the wilful, wanton and malicious acts of said defendants, as herein set forth, many contractors, who would otherwise have been glad to deal with the plaintiff and award him lathing sub-contracts have failed and refused to deal with him or to permit him to bid, because of the fact that plaintiff has been black-listed as a lathing contractor by the International Union; that, on many jobs on which plaintiff would bid, union labor is used exclusively, and that, consequently, plaintiff's ability to work and earn a livelihood for himself has been greatly restricted by the wilful, wanton and malicious acts of said defendants.

"38. That, by reason of the acts of said defendants in having the plaintiff black-listed as hereinbefore set forth, and by reason of the plaintiff's consequent inability to procure other lathing sub-contracts which he otherwise would have procured, plaintiff has suffered further actual damage in the sum of $5,000.

"39. That, by reason of the wilful, wanton and malicious acts of the defendants in having the plaintiff black-listed on jobs which he could and would have procured as a lathing contractor, except for said acts, the plaintiff is entitled to recover of the defendants as punitive damages the sum of $25,000 on plaintiff's second cause of action.

"WHEREFORE, the plaintiff prays judgment against the defendants for the sum of $9,900 as actual damages and for the sum of $35,000 as punitive damages, and for the costs of the action to be taxed by the Clerk."

D. E. Henry and B. L. Henry filed answer denying material allegations of the complaint. Grady C. Kilpatrick and R. F. Gleason filed answer denying the material allegations of the complaint. A. W. Swann denied the material allegations of the complaint. Special appearance and motion to dismiss was filed on behalf of the defendants, Wood, Wire and Metal Lathers' International Union, Wm. J. McSorley and Terry Ford.

The order of the court below is as follows:

"This cause coming on to be heard before the undersigned, Judge presiding at the February 1941 Extra Term of Mecklenburg Superior Court for the trial of civil cases, and being heard upon the special appearance and motion to dismiss the action as to William J. McSorley, Terry Ford, and The Wood, Wire and Metal Lathers' International Union, and being heard upon the papers hereinafter referred to and upon the argument of counsel, and it appearing that said motion to dismiss should be allowed as to the defendants William J. McSorley and

Terry Ford and should be denied as to The Wood, Wire and Metal Lathers' International Union:

"Now, Therefore, It is Ordered, Adjudged and Decreed that the motion to dismiss the above-entitled action as to the defendants William J. McSorley and Terry Ford should be, and the same is hereby allowed.

"It is further ordered that the motion to dismiss the above entitled action as to The Wood, Wire and Metal Lathers' International Union be, and the same is hereby denied. This 27th day of February, 1941. A. Hall Johnston, Judge Presiding."

The motion was allowed as to the defendants Wm. J. McSorley and Terry Ford. To the order denying the motion to dismiss the above entitled action as to The Wood, Wire and Metal Lathers' International Union, said defendant excepted, assigned error and appealed to the Supreme Court.

The defendant The Wood, Wire and Metal Lathers' International Union groups its exceptions and makes its assignments of error as follows:

"1. That the Court denied its motion to dismiss made on its special appearance on the grounds that said defendant has not been properly served with process in this action. The defendant The Wood, Wire and Metal Lathers' International Union excepted to the ruling of the Court, which is defendant Wood, Wire and Metal Lathers' International Union's Exception No. 1.

"2. That the Court denied its motion to dismiss this action as to the defendant Wood, Wire and Metal Lathers' International Union on the ground that it is an unincorporated association of tradesmen which has no legal residence in the State of North Carolina and service of process has not been had upon it in any way provided by the laws of the State of North Carolina. The defendant Wood, Wire and Metal Lathers' International Union excepted, which is said defendant's Exception No. 2."

*G. T. Carswell and Joe W. Ervin for plaintiff.*
*McDougle & Ervin and Francis H. Fairley for defendant, appellant.*

CLARKSON, J. The *first* question involved on the appeal: (1) Can the plaintiff maintain in the courts of this State an action at law for damages against the appealing defendant, The Wood, Wire and Metal Lathers' International Union, which is a voluntary unincorporated association of individuals commonly known as a labor union? We think not.

Plaintiff alleges that the appealing defendant is a "voluntary unincorporated association." This matter has long been settled in this State contrary to the plaintiff's contention.

In *Tucker v. Eatough,* 186 N. C., 505 (507), it is stated: "The com-

plaint in this case shows plainly that the action was brought against the association, and in this State only natural or artificial persons can be brought into court upon summons. The defendant, United Textile Workers of America, not being incorporated, is without capacity to sue or be sued, and the court properly dismissed the action *ex mero motu.* . . . (p. 508) Among other cases, in the *Coronado Coal case,* 259 U. S., 344, *Chief Justice Taft* uses the following language: 'Undoubtedly at common law an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. *Pickett v. Walsh,* 192 Mass., 572; *Karges Furniture Co. v. Amalgamated Woodworkers' Local Union,* 165 Ind., 421; *Baskins v. United Mine Workers of America,* 234 S. W., 464. But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. Their right to maintain strikes, when they do not violate law or the rights of others, has been declared.' In the famous *Taff-Vale case,* in which an unincorporated labor union was held to be suable, this was placed solely upon the ground that Parliament had passed the Trade Union Act of 1871, which permitted trade unions to be registered, and gave to registered unions the power to own property and to act by agents. This is cited and explained by *Judge Taft* in the *Coronado Coal decision, supra.* In North Carolina there is no legislation thus changing the common-law, and the Legislature has not authorized, but has refused to authorize these unincorporated associations to take and hold property in their association name. In the *Coronado case* it is said by *Chief Justice Taft:* 'There is no principle better settled than that an unincorporated association cannot, in the absence of a statute authorizing it, be sued in the association or company name, but all the members must be made parties, since such bodies, in the absence of statute, have no legal entity distinct from that of its members.' 5 C. J., 1369; 20 R. C. L., 672, and many other cases. . . . (p. 509) But upon the broader ground, if contrary to common law, an action could be brought without authority of a statute against an unincorporated body, it would be permissible for any person to bring an action against the Confederate Veterans Association, or the American Legion, or the League of Women Voters, or any other unorganized body upon an allegation that one of their members had committed the libel or other legal wrong against the person bringing the action. It certainly cannot be necessary to discuss further the proposition that the United Textile Workers of America not being a legal entity, and there being no statute authorizing them to be sued, that the action was properly dismissed as to them."

In *Citizens Co. v. Typographical Union,* 187 N. C., 42, it was held:

"An unincorporated company or association of workmen is not, as such, subject to be sued or the object of injunctive relief. The individual members of a labor organization may ordinarily combine in their efforts, by peaceful persuasion and picketing, to induce others to quit their employment by uniting with them in ceasing to work for employers, whether corporations or individuals; but the employers and employees have relative rights, the one to the services and the other to render services, free from coercion, intimidation, or other unlawful or threatening influences; and there the complaint states a definite cause of action against individual members of an unincorporated labor organization, a demurrer admits the truth of the relevant and pertinent allegations, and thereupon a temporary injunction issued upon due notice to show cause should be continued to the hearing, upon the merits of the cause, for the finding of the facts by the jury." At p. 52, it is said: "The exceptions of plaintiff have been considered on the demurrer, *ore tenus* of defendants to the complaint. The judgment of the court below dissolving the restraining order against the Asheville Typographical Union, No. 263, is affirmed. As against the individuals set out in the complaint, the judgment is reversed and modified in accordance with this opinion. The restraining order under the judgment of the court below is continued against the individual defendants to the hearing and modified in accordance with this opinion." *Jinkins v. Carraway,* 187 N. C., 405; *Winchester v. Brotherhood of R. R. Trainmen,* 203 N. C., 735 (744, 745). In the *Winchester case, supra,* the plaintiff had a Beneficiary Certificate or Insurance Policy. The case was decided on the applicable statutes in reference to the regulation and control of fraternal benefit and insurance associations.

At the next session of the General Assembly, Public Laws of N. C., 1933, chapter 24, was enacted:

"Section 1. That section number four hundred and eighty-three of the Consolidated Statutes of North Carolina be and the same is hereby amended by adding another section thereto as follows: 'Every unincorporated, fraternal, beneficial organization, fraternal benefit order, association and/or society issuing certificates and/or policies of insurance, whether foreign or domestic, now or hereafter doing business in this State, shall be subject to service of process, in the same manner as is now or hereafter provided for service of process on corporations: *Provided,* this act shall only apply in actions concerning such certificates and/or policies of insurance."

Also was enacted chapter 182, which reads: "Section 1. That section number four hundred and fifty-seven of the Consolidated Statutes of North Carolina shall be and the same is hereby amended by adding another section thereto, as follows: 'Any and/or all unincorporated, beneficial organizations, fraternal benefit orders, associations and/or

societies, or voluntary fraternal beneficial organizations, orders, associations and/or societies issuing certificates and/or policies of insurance, foreign or domestic, now or hereafter doing business in the State, shall have the power to sue and/or be sued in the name commonly known and/or used by them in the conduct of their business to the same extent as any other legal entity established by law, and without naming any of the individual members composing it; *Provided,* however, this act shall apply only in actions concerning such certificates and/or policies of insurance."

The General Assembly, the law-making body, has never seen fit to pass an act allowing or permitting a voluntary unincorporated association of individuals, commonly known as a labor union, to sue or be sued, or the method by which process can be served. The above quoted acts do allow service of process on unincorporated organizations and permit them to sue and be sued that issue certificates or policies of insurance. These are enabling acts and seem to follow the decision in the *Winchester case, supra.*

N. C. Code, 1939 (Michie), sec. 457 and sec. 483, are not applicable. The proviso in both say: *"Provided,* however, this section shall apply only in actions concerning such certificates and/or policies of insurance." The last sentence of these sections, relating to unincorporated, beneficial organizations, fraternal orders, etc., were added by Public Laws 1933, ch. 24 and ch. 182, *supra.*

We do not discuss the United States statutes or decisions. We are deciding the action in the light of the decisions in this jurisdiction, which we believe are in accord with the majority rule of the states in the Union.

The *second* question involved: Has the appealing defendant, The Wood, Wire and Metal Lathers' International Union, been properly served with process in this case? We think not.

The defendant, The Wood, Wire and Metal Lathers' International Union, having no legal entity, the attempted service in any way is null and void. Of course plaintiff has a remedy by suing the wrongdoers, as he has done, as was said in the *Citizens Co. case, supra.* This type of action denotes a chaotic and nebulous condition—such as the world was in until the Supreme Commander said, "Let there be light, and there was light." Until the General Assembly enacts the power to sue and be sued and the manner of service of process, there is no legal entity capable of being served with process or to sue and be sued.

For the reasons given, the judgment of the court below in reference to the appealing defendant is

Reversed.

STACY, C. J., BARNHILL and WINBORNE, JJ., concur in result.