**TEXTILE WORKERS UNION OF AMERI-
CA v. AMAZON COTTON MILL CO.**
Civ. No. 150–S.

District Court, M. D. North Carolina,
Salisbury Division.

Dec. 29, 1947.

160

See also 76 F.Supp. 165.

Robert S. Cahoon, of Greensboro, N.C., and Izadore Katz and David Jaffe, both of New York City, for plaintiff.

L. P. McLendon and Thornton H. Brooks, both of Greensboro, N.C., and Don A. Walser, of Lexington, N.C., for defendant.

HAYES, District Judge.

This is an action by the Textile Workers Union of America, an unincorporated association, a labor union affiliated with the congress of Industrial Organizations against Amazon Cotton Mill Co., a North Carolina corporation with its principal office and place of business at Thomasville, N.C., in the Middle District of North Carolina.

It is alleged that plaintiff is now and has been continuously the designated bargaining agent of the enumerated employees of the defendant since the certification to that effect by the National Labor Relations Board on November 24, 1943, pursuant to an election held under the provisions of the Wagner Act, 29 U.S.C.A. § 151 et seq. It is alleged that defendant is engaged in inter-state commerce by purchasing raw materials 75% of which is shipped to it from outside North Carolina and that it produces annually products in excess of $5,000,000, 50% of which is shipped to points outside of North Carolina. It is alleged that defendant contracted with plaintiff, recognizing it as the statutory sole bargaining agent until the expiration date of the contract February 28, 1947; that plaintiff in good faith sought a contract with defendant before the expiration date and at repeated intervals since that date, but defendant has refused and failed to bargain collectively with plaintiff, has refused to recognize plaintiff as the bargaining agent; that by reason of defendant's refusal the employees of defendant concertedly ceased work on March 3, 1947 and have not returned to work; defendant has interfered with, restrained and coerced its employees in the exercise of their rights to self organization, to form, join or assist a labor organization, to bargain collectively through a representative of their own choosing and refused to bargain with plaintiff, the statutory sole collective bargaining agent of its employees, all in violation of section 7 and 8(a) (1) and (5) of the National Labor Relations Act, as amended.

It is further alleged that plaintiff and the employees it represents have at all times complied with all obligations imposed by law; that unless the defendant is restrained from violating the law and is required to comply with the law, the plaintiff and the employees will suffer irreparable damages; the unlawful acts done and being done and likely to be done by defendant, the plaintiff and the employees whom it represents will suffer irreparable injuries. It is alleged that plaintiff has made every reasonable effort to settle its dispute with defendant by negotiation and with the aid of governmental machinery of mediation and conciliation and has offered to arbitrate, but defendant has refused to do so.

The relief prayed is an injunction against a continuation by defendant of the unfair labor practices alleged until the National Labor Relations Board certifies that plaintiff is no longer the sole bargaining agent of the defendant's employees and damages in the sum of $500,000 be awarded plaintiff and those employees of the defendant whom plaintiff represents. The complaint is verified by William Pollock, the General-Secretary-Treasurer of the Association.

To this complaint and application for temporary restraining order, the defendant comes with a motion to dismiss for three reasons: 1. The court lacks jurisdiction over the plaintiff—2. The court lacks jurisdiction over the subject matter of the action—3. The complaint fails to state a claim upon which relief can be granted.

The defendant asserts that Rule 17(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, sustains his view. The pertinent clause provides: "In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held; except that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the constitution or laws of the United States." Reliance is placed on the interpretation given by Justice Rutledge in Fennell v. Bache, 74 App.D.C. 247, 123 F.2d 905. The law of North Carolina seems to close the doors of the courts to labor unions. Tucker v. Eatough, 186 N.C. 505, 120 S.E. 57; Citizens' Company v. Asheville Typographical Union, 187 N.C. 42, 121 S.E. 31; Hallman v. Wood, Wire & Metal Lathers' International Union, 219 N.C. 798, 15 S.E.2d 361.

It is unnecessary to dwell on the law of North Carolina for, as I see it, this case comes clearly under the exception stated in the rule. The existing laws of the United States confer substantial rights upon labor unions and their members. It is conceded that those rights under the original Wagner Act were restricted to the exclusive power of the National Labor Relations Board, as was held in Agwilines, Inc., v. National Labor Relations Board, 5 Cir., 87 F.2d 146; Blankenship v. Kurfman, 7 Cir., 96 F.2d 450; A.F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Amalgamated Utility Workers v. Consolidated Edison Company, 309 U.S. 26, 60 S.Ct. 561, 84 L.Ed. 738; National Licorice Company v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799.

All of these decisions were rendered before the enactment of the Labor Management Relations Act of 1947, Taft-Hartley Act, 29 U.S.C.A. § 141 et seq. And it may be assumed that the Senators and Congressmen supporting this Act were reasonably familiar with the decisions of the courts, especially the cases cited above. Management complained bitterly about the enforcement of the Act by the Labor Board, that the hearings were not impartial and evidence inadmissible in any court was admitted and decisions made on the basis of it. Certain elements of labor were not satisfied. Congress endeavored to correct many of the defects of the original Act. A word by word comparison of the Wagner Act with the Taft-Hartley Act will disclose that every essential benefit created by the Wagner Act is still preserved and that a more judicial method of enforcement is provided for. For example, the evidence must be admissible under the same rule governing admissibility of evidence under the rules of evidence in the federal courts and the "exclusive" power conferred upon the National Labor Relations Board under the Wagner Act is reduced in the Taft-Hartley Act by eliminating the word "exclusive". Since the power under the Wagner Act to redress a wrong was vested exclusively in the Labor Board, I am convinced that the restricted redress accounts for the broad statements that the Wagner Act created no private rights in the labor union or in its members. Other courts may now hold that the existing law creates no private rights in employees and their unions, but I am unable to reach that conclusion now. With the exception of war and its successful prosecution, labor legislation during the past quarter of a century has concerned Congress and the Courts more than has any other legislation. Can it now be said that labor unions and employees have no rights created by federal law? Are both the Wagner Act and the Taft-Hartley Act legislation for the public and in which a union or an employee has no substantive right? Have labor leaders and the friends of labor, in and out of Congress, labored all of these years for laws that are worthless to the unions and its members? The Wagner Act established definite rights in favor of unions and of working men. They were given the right to organize

without intimidation or coercion on the part of the employer and to select a representative of their own choosing to negotiate contracts in their behalf and that law required the employer to bargain with the certified agent. The Taft-Hartley Act re-enacts every beneficient feature of the Wagner Act to perpetuate these rights and substantially strengthens the Wagner Act by giving the employer the right to state his reasons why the employees should not join a given union provided the employer refrains from threats, intimidation or coercion; by requiring competent evidence to support a finding by the labor board and by eliminating the word "exclusive" so that the power to enforce the provisions of the law are not to reside solely in the National Labor Relations Board.

■ Extremists in any cause frequently thwart the very cause they hold sacred. The over-zealous friends of prohibition contributed unwittingly to the repeal of the Eighteenth Amendment. There is nothing in the language of the Wagner Act nor in the Taft-Hartley Act which causes me to doubt for one moment that these laws were enacted for the purpose of providing and safe-guarding to employees engaged in commerce the right to organize, the free right to choose a representative of their own to negotiate for them as to wages, hours, etc., and to require the employer in good faith to bargain collectively with the representative certified by the National Labor Relations Board.

■ Neither congressmen nor judges are blind to the fact that there are many employers yet who dislike labor unions and who are still disposed to defeat their right to organize and to bargain collectively, nor are they unmindful of the long and strenuous struggle which the working man sustains in his effort to organize effectively. When they do organize and do choose a representative to bargain collectively for them, the law—the federal law—secures these rights and affords appropriate measures to enforce them. The National Labor Relations Board under the Wagner Act and under the Taft-Hartley Act can decide if the employer is engaging in an unfair labor practice and order it to cease and desist and, if necessary, apply to the court for an enforcement order. Under the Wagner Act this was the exclusive remedy. But under the Taft-Hartley Act the remedy is broadened by striking out the word exclusive. There are lawyers in congress and good lawyers too. They know where there is a right there is a remedy and that the courts of the United States have jurisdiction to enforce every federally created right. I hold that the right of employees in commerce to organize and to enjoy freedom in choosing an agent or union to represent them and to require the employer to bargain collectively with such agent is a substantial right. It affects vitally the very existence of a labor union. If it is unable to improve the fortunes of the working man, why have one? In my judgment the Taft-Hartley Act clearly establishes private rights enforcible by labor unions and that the Federal courts and the National Labor Relations Board are forums to which they may go for the preservation and recognition of those rights.

■ I can not agree with the reasoning that a labor union has no capacity under the federal law to sue. The whole trend of federal legislation and of federal law is away from that archaic relic of the Common Law. The C.I.O., the A.F. of L., the United Mine Workers and the Railroad Brotherhoods are labor organizations which combined represent the production and transportation of the commerce of this country. Anyone of these possesses power enough to demoralize the commerce of the country, but acting together can destroy it and in doing so, destroy themselves. To hold that such a powerful creature has no capacity to sue is doing something without a reason to support it. Is it more important to follow the old common law where reason ceases to sustain it than to keep pace with a swiftly changing economic world where organized labor is an inseparable part of it? Under the common law a wife was not allowed to testify in behalf of her husband in a criminal case. The temptation to perjury was deemed too great. In Funk v. United States, 290 U.S. 371, 381, 54 S.Ct. 212, 215, 78 L.Ed. 369, 93 A.L.R. 1136, speaking of the common law rule, it is said: "It may be said that the court

should continue to enforce the old rule, however contrary to modern experience and thought, and however opposed, in principle, to the general current of legislation and of judicial opinion it may have become, leaving to Congress the responsibility of changing it. Of course, Congress has that power; but if Congress fail to act, as it has failed in respect of the matter now under review, and the court be called upon to decide the question, is it not the duty of the court, if it possesses the power, to decide it in accordance with present-day standards of wisdom and justice rather than in accordance with some outworn and antiquated rule of the past?—* * * That this court and the other federal courts, in this situation and by right of their own powers, may decline to enforce the ancient rule of the common law under conditions as they now exist, we think is not fairly open to doubt."

But Section 301(b) of the Taft-Hartley Act removes all doubt as to the right of a labor organization to sue in the federal courts.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities effect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforcible only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." Act of June 23, 1947, c. 120, Title III, Section 301(b), 61 Stat. 156, 29 U.S.C. § 185(b), 29 U.S.C.A. § 185(b).

The legislative history shows a congressional purpose to confer the right and this harmonizes with the removal of the theretofore "exclusive" power of the National Labor Relations Board. The explanation of the House Managers of the Conference Committee makes it perfectly clear if there had been any doubt

"Section 302(b) of the House Bill provided that any labor organization whose activities affected commerce should be bound by the acts of its agents and might sue or be sued as an entity in the courts of the United States. * * * This sub-section and the succeeding sub-sections of section 301 of the conference agreement (as was the case in the House Bill and also in the Senate Amendment) are general in their application, as distinguished from subsection (a)." House of Representatives Report No. 510, 80th Congress 1st. Sess. June 3, 1947, page 66.

The right of labor unions to sue was recognized by the Supreme Court in United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L. Ed. 975, 27 A.L.R. 762; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500; also in Hague v. C.I.O., 3 Cir., 101 F.2d 774.

■ What has been said eliminates the contention that this court lacks jurisdiction over the subject matter of the litigation. Jurisdiction is clearly conferred by 28 U.S.C.A. § 41(8). A.F. of L. Dept. Metal Trades v. Watson, 327 U.S. 582, 589, 591, 66 S.Ct. 761, 90 L.Ed. 873. The authorities on which defendant relies, namely, Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; McCauley v. Waterman Steamship Corporation, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839 and United Electrical Radio and Machine Workers of America v. International Brotherhood of Electrical Workers, 2 Cir., 115 F.2d 488 are inapposite because it is now manifest under the Taft-Hartley Act that the power to remedy unfair labor practices is not vested exclusively in the National Labor Relations Board, and those rights are substantial and are enforceable in a federal court. Texas & N. & O. R. Co. v. Brotherhood of Railway & S.S. Clerks, 281 U.S. 548, 569, 50 S.Ct. 427, 74 L.Ed. 1034. It is still contended by defendant that the only remedy to redress an unfair labor practice is by way of National Labor Relations Board. With this view I can not agree. There are, under the Taft-Hartley Act, important acts and decisions vested in the National Labor

Relations Board with which the courts will not interfere. The statement of the managers on the part of the House is pertinent: "The Senate amendment, because of its provisions authorizing temporary injunctions enjoining alleged unfair labor practices and because of its provisions making unions suable, omitted the language giving the Board exclusive jurisdiction of unfair labor practices, but retained that which provides that the Board's power shall not be affected by other means of adjustment or prevention. The conference agreement adopts the provisions of the Senate amendment. By retaining the language which provides the Board's powers under Section 10 shall not be affected by other means of adjustment, the conference agreement makes clear that, when two remedies exist, one before the board and one before the courts, the remedy before the board shall be in addition to, and not in lieu of, other remedies."

■ It appears from the affidavit filed by defendant that plaintiff filed an unfair labor charge against defendant with National Labor Relations Board on March 19, 1947 and hearings were being conducted December 11, 1947. The defendant urges that the matter is before the Board and that the court is powerless to proceed. On the basis of the allegations contained in the complaint under oath, I can not agree that the plaintiff's remedy is confined to the National Labor Relations Board. The remedy there provided is "in addition to and not in lieu of, other remedies."

It would appear that in this day of an abnormally high living cost, a working man dependent upon his daily wage to support himself and family, having waited without employment from March to December 11, 1947, for relief without gaining it, should not be denied a hearing on it in a court of equity because his remedy is adequately provided for through the powers of The National Labor Relations Board. This seems absurd when we are asked to decide under the present law that the Board acts only for the public and not in protection of private rights; that no private rights are conferred by the law. If the conduct of the defendant is a public wrong which can be redressed in behalf of the public through

the power of the Labor Board, surely the parties who suffer most by that wrong have a remedy to alleviate their burden. Under the Railway Labor Act of 1926, 45 U.S.C.A. § 151 et seq. Hughes Chief Justice said in Texas & New Orleans Railroad Co. v. Brotherhood of Ry. and Steamship Clerks et al., 281 U.S. 548, 50 S.Ct. 427, 433, 74 L.Ed. 1034: "The absence of penalty is not controlling. The creation of a legal right by language suitable to that end does not require for its effectiveness the imposition of statutory penalties. Many rights are enforced for which no statutory penalties provided. * * * The right is created and the remedy exists." Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

■ Finally, there is no merit in the contention that the plaintiff is not a real party in interest. If a labor union is unable to protect its membership in the courts, then its very existence is at stake. Its power is utterly dissipated. If it can do nothing for its members but each one must protect itself, the employee is no better off now than he was before congress clothed him with the legal right to organize, to choose bargaining agents and to bargain collectively. Congress has left no such doubts in the existing law. It has recognized the existence and the function of the labor unions. It has given them the same status as any person; it has expressly conferred on the union the power to sue and be sued under the Taft-Hartley Act. The Supreme Court said in the A.F. of L. Metal Trades Dept. v. Watson, 327 U.S. 594, 66 S.Ct. 761, 767, 90 L.Ed. 873: "The loss in bargaining position by the unions, the disruption of harmonious relationships between the union and the employers, the almost certain decrease in union membership— these are matters involving intangible values. * * * We can not see how any remedy at law in the federal courts would be adequate." It is safe to assume that if this action had been brought by an employee the point would have been made that the duly chosen agent would be the only one who could maintain it. The law confers the right on the agent to negotiate; it requires the employer to recognize the agent and to bargain collectively.

The agent is therefore the real party in interest although it acts primarily in behalf of its membership.

It is not necessary to discuss the Norris LaGuardia Act at length. The purpose of that law was to take from the courts the power to restrain members of a labor union in a labor dispute. It was enacted in the behalf of labor and at its behest and by its friends. It does not deprive a labor union of the right to seek injunctive relief. The complaint however alleges compliance with the provisions of the Act.

The motion to dismiss is denied and the hearing for an injunction pending a final hearing is set for hearing at Greensboro, N. C., on January 2, 1948 at 10 a. m.

Defendant excepts. Exception allowed. Defendant is allowed twenty days from December 29, 1947 in which to file an answer·