JESSIE JINKINS v. STEPHEN CARRAWAY, Trustee of EXCELSIOR
HOUSEHOLD OF RUTH, No. 4224, et als.

(Filed 12 March, 1924.)

Courts—Jurisdiction—Unincorporated Associations—Mandamus.

The courts have no jurisdiction over the management of an unincorporated association, or order, by *mandamus*, wherein there has been no violation of criminal law, or where the deprivation of property rights is not in question.

Appeal by defendants from *Grady, J.,* at chambers in Kinston, December, 1923.

This is a proceeding begun by a motion for an alternative *mandamus* for reinstatement as a member in Ruth Lodge, No. 4224. The defendants demurred *ore tenus* for lack of jurisdiction. The demurrer was overruled.

Defendants Stephen Carraway, Sarah Brown, and Bertha Moore are the trustees of Excelsior Household of Ruth, No. 4224, an unincorporated fraternal organization, located at Kinston, N. C., and the other defendants are the councilor and secretary of said lodge.

At a meeting of said lodge in June, 1922, a charge was preferred against the plaintiff for violation of a rule or by-law, in that she had called another member "a liar" in open lodge; and after due trial in said lodge the plaintiff was ordered to pay a fine of $10. She appealed to the District Household of Ruth, No. 10, which had appellate jurisdiction. On appeal, judgment was rendered by the appellate lodge "That Sister Jessie Jinkins pay a fine of $3 and go before the Household and beg pardon. If she refuses, then she stands expelled until she does." After said decision the plaintiff elected to pay the fine of $3 which the said Excelsior Household refused to receive, and the plaintiff alleges, that she also tendered the lodge the amount of her dues which the lodge refused to receive, and thereupon the plaintiff instituted this proceeding asking for an alternative writ of *mandamus* to compel the lodge to readmit the plaintiff to full and complete membership in Excelsior Household of Ruth, No. 4224.

The answer admits that the plaintiff had finally tendered the $3 and she offered to apologize to the District Household, but she had refused to "apologize to them niggers in the subordinate household," and that she has never paid anything and still owes her dues. In the court on the hearing among the evidence put in was the following minutes of the lodge:

"Wednesday, afternoon session at 2 o'clock p. m. Sister Sadie F. Fagan, district grand most noble governor, sounded the gavel; quarterly

pass taken, all correct; roll of officers called; all present; invocation by district worthy prelate, Sister Victoria Lofton; music, 'Blest be the Tie That Binds.' Meeting declared open for business; committee on D. G. M. N. G.'s address being ready, came forward and submitted its report through its secretary, Sister Alice E. Riddick. . . .

"We, your committee on trial, beg leave to make our report, as following: Sister Jinkins was present to answer charge. We decided according to law 34, on page 37, and section 10, that Sister Jinkins shall pay a fine of three dollars ($3.00) and go before the H. H. R. and beg pardon. And if she fails within thirty days from date she shall pay a fine of $10 and it be added to her dues. Signed: Bertha Moore, Mollie Jones, Carrie Brown, E. E. Brown.

"The above decision was adopted by the H. H. R., 4224, and committee, 2 June, 1922. Signed: M. K. Holloway, W. R."

Upon hearing the case, Grady, J., rendered judgment "that the defendants accept the sum of $3 and that upon tender of an apology to said subordinate lodge, No. 4224, that she be reinstated as a full-pledged member of said subordinate lodge, No. 4224," and taxed the plaintiff with the cost. Defendants appealed.

*Sutton & Green and Shaw & Jones for plaintiff.*
*Rouse & Rouse and Moore and Croom for defendants.*

CLARK, C. J. It appears in this hotly-contested case, in which each side is represented by four counsel, that the defendant Household of Ruth, No. 4224, to which the plaintiff seeks from the courts *mandamus* to be readmitted as a member, which the court granted upon condition that she pay a fine of $3 and go before the Household and apologize, is an unincorporated association. It also appears that it is an association of colored members, and apparently from the names in the record consisting mostly of women, singularly enough in an order styled "Odd Fellows."

This Court will exercise its duty of administering justice irrespective of the size and nature of the wrong complained of, provided it has jurisdiction; but in this matter, important as doubtless it seems to the parties, the first question is the one asked in Scripture, "Who made us judges of such matters?"

We have held recently in *Tucker v. Eatough,* 186 N. C., 505, that "An unincorporated association or society has no legal entity at common law and has none conferred by statute, and that the Court will dismiss the action when there is want of jurisdiction *ex mero motu,* and that a written demurrer for want of jurisdiction cannot confer jurisdiction

upon the Court." This ruling has been affirmed since in *Citizens Co. v. Typographical Union; ante,* 42. Without minimizing the importance which the parties and their counsel attach to this proceeding, they must be left to settle it in their own manner, for the courts are entirely without jurisdiction to consider the case.

It has been often held in other jurisdictions also that there is no such entity known to the law as an unincorporated association, and consequently it cannot be made a party defendant. *Picks v. Walsh,* 192 Mass., 589. A voluntary association being only a collection of individuals could not at common law sue or be sued by its associated name. *Lewelling v. Woodworkers Underwriters,* 140 Ark., 128; and numerous other cases cited in 33 Yale Law Journal, 383 (February, 1924), in an article where the lack of jurisdiction by the courts over unincorporated associations is most fully discussed with an exhaustive citation of authorities on the subject.

In 18 R. C. L., p. 144, sec. 60, it is said: "Ordinarily a *mandamus* will not lie to regulate the internal affairs of unincorporated associations for, as has been said, if the writ would lie to regulate the affairs of such an association, it could with equal reason be invoked to regulate the affairs of a copartnership. . . . In this connection, membership in a voluntary association of individuals, organized without a charter, but regulated as to their action by a constitution and by-laws, is a privilege which may be accorded or withheld, and not a right which can be gained independently and then enforced, and as a general rule *mandamus* cannot be maintained against such an association by a party to compel it to admit him to membership and office therein. And if expulsion from such association does not involve the loss of any property rights, *mandamus* will not lie to compel restoration though the expulsion may have been unlawful; and the broad view has been taken that *mandamus* will not lie to reinstate a person to membership though his expulsion may have been unlawful and may have injuriously affected the member's pecuniary interest," and there are many citations in the notes to sustain these statements.

However ruthless or otherwise the action of Excelsior Lodge, No. 4224, of Ruth may have been, the courts have no jurisdiction to compel it to readmit the plaintiff and require her to apologize to the subordinate lodge for her use of what the lodge held to be "unparliamentary language" in calling another member a liar. The court should, like the most noble Festus, Acts XXV, have held it *"inter alios acta,"* of which the court had no jurisdiction.

*Commonwealth v. Union League,* 20 Am. State Rep., 870, and notes, hold that a judgment of expulsion of a member of a social club in

good faith, and after conviction under its charter and by-laws, cannot be reëxamined by a court of justice.

Also *Doyle v. Burke,* 16 A. & E. Anno. Cas., 1245, holds that the remedy of a person who has been wrongfully expelled from membership in a voluntary unincorporated association is by an action for damages and not by *mandamus* to compel his restoration to membership. See the numerous cases cited in the notes thereto.

*S. v. Cook,* 32 A. & E. Anno. Cas., 89, and notes thereto, hold that the writ of *mandamus* does not lie to regulate the affairs of unincorporated societies or associations.

In *Hatfield v. Cummins,* 36 L. R. A. (N. S.), 945, and the voluminous notes thereto, it was held that a *mandamus* will not lie to compel members of an unincorporated religious society to restore a member expelled therefrom, where the right violated is merely one of the religious association or worship.

Where the act complained of is a deprivation of property rights or a violation of criminal law, the courts will take cognizance not by a *mandamus* nor to regulate the proceedings of the unincorporated association among themselves, but to enforce the general law of the State. For instance, in *S. v. Williams,* 75 N. C., 134, it was held that "the rules of discipline for all voluntary associations must conform to the laws; hence when a member of such an association refuses to submit to the ceremony of expulsion established by the same, which ceremony involved a battery, it cannot be lawfully inflicted." In that case a woman member had been suspended from the wall by a cord fastened around her waist, with other ceremonies according to the rites of the "Good Samaritans" had been inflicted, not viciously but as part of the rite of expulsion under its by-laws. The Court held that this was an assault and battery and cognizable by the courts.

In this case, whether the language used was unparliamentary and whether, on the imposition of the fine of $3 and the judgment that she should apologize to subordinate lodge, her refusal to "apologize to them niggers in the subordinate household" could be punished by expulsion was purely a matter of internal regulation by the society involving no property rights nor violation of the criminal law. The court, therefore, had no jurisdiction.

Action dismissed.