This is an action brought by plaintiff against the defendant to recover $1,875, in which he alleges: "That the defendant is now and was at the time hereinafter mentioned an organization doing business and owning property within the State of North Carolina. That the defendant, at the time herein mentioned, was engaged in the business of *Page 736 
issuing, within the State of North Carolina and elsewhere, policies of insurance designated as `Beneficiary Certificates.'"
That while employed by the Seaboard Air Line Railroad Company as switchman at Monroe, N.C. the defendant issued its so-called Beneficiary Certificate, No. C-437525 (copy of which is set out in the record), in the sum of $1,875. That the treasurer and secretary of Monroe Lodge, No. 643, of the Brotherhood of Railroad Trainmen, on 20 June, 1926, delivered to him said certificate. "That from the issuance to him of the certificate referred to in the preceding paragraph, to 1 December, 1929, the plaintiff paid to the defendant all dues and assessments upon said certificate as required by the defendant, and as provided by the terms of the certificate, through the treasurer and secretary of Monroe Lodge, No. 643; that on 1 December, 1929, plaintiff mailed to B. W. Snyder, treasurer and secretary of the aforesaid lodge, his check, dated 1 December, 1929, in the sum of $3.45 in full payment of his dues and assessments upon the aforesaid certificate for the month of December, 1929; that thereafter, on 23 December, 1929, the aforesaid B. W. Snyder returned to the plaintiff the aforesaid check, together with a letter stating that the defendant refused to accept payment of plaintiff's dues for the month of December, 1929, and that plaintiff had been expelled from membership in the Brotherhood of Railroad Trainmen."
Plaintiff alleges that this was entirely unjustified, without valid excuse, and was a concocted scheme to deprive him of certain rights he had under the policy that he had, and was ready, able and willing at all times to pay his monthly dues and assessments. That at the time of the issuance of the policy "he was in good physical condition, and his eyesight was normal and unimpaired." That while the beneficiary certificate was in full force and effect the plaintiff, in the month of September, 1926, discovered he was losing the sight of his left eye; that his eyesight had suddenly become impaired. That he went to see a reputable and skilled oculist and notwithstanding the best treatment of modern and up-to-date science known to a most reputable oculist, within one month he completely and permanently lost the sight of his left eye. That he is now blind in said eye and will remain so.
That about 14 February, 1927, on account of the loss of his left eye, he was unable to perform his duties and was forced to resign as railroad trainman from the Seaboard Air Line Railroad Company. "That section sixty-eight of the Constitution of Brotherhood of Railroad Trainmen, upon which constitution Beneficiary Certificate, No. C-437525, was issued by the defendant to the plaintiff, provides that in the event any beneficiary member shall suffer the complete and permanent *Page 737 
loss of sight of one or both eyes he shall be considered totally and permanently disabled, and shall thereby be entitled to receive the full amount of his beneficiary certificate — $1,875. That the plaintiff has furnished to the defendant abundant and creditable evidence to establish the fact that he has completely and permanently lost the sight of his left eye, and that he is totally and permanently disabled to perform work for a railroad; that he has furnished to the defendant statements from oculists of unquestionable character and ability, establishing this fact, and that he has voluntarily presented himself to the defendant for examination by oculists of its own selection; that, in spite of this overwhelming and uncontradicted evidence to the fact that plaintiff is completely and permanently blind in his left eye, except unfounded and unjustified contradictions on the part of the defendant itself, the defendant has arbitrarily and unreasonably and without any valid explanation or excuse, refused to pay plaintiff's claim or any part thereof, and has arbitrarily and unreasonably rejected said claim and refused to carry out and perform its contract and agreement with this plaintiff, pursuant to the terms and conditions of plaintiff's beneficiary certificate. That the plaintiff absolutely relied upon the terms, provisions and conditions of section 68 of the Constitution of the Brotherhood of Railroad Trainmen, upon which constitution his beneficiary certificate was issued to him, and that he absolutely relied upon the statements and representations made to him by the defendant, its agents and representatives, as to the contents, construction, interpretation and meaning of said policy or certificate, and that he was positively assured by the defendant, its agents and representatives that in the event he should lose the sight of one eye he would be entitled to the full amount of his certificate; that said representations were well known to the defendant, and that they were being made under the direction of the defendant, and that, relying thereon, he took said policy or certificate and kept up the payments thereon. . . . That prior to the institution of this action, the plaintiff duly performed all the conditions and obligations to be performed by him under the terms and provisions of said certificate, entitling him to institute action thereon. That on account of the things hereinbefore set forth, the defendant is indebted to the plaintiff in the sum of $1,875, with interest thereon from 17 March, 1928, until paid; that often and repeated demands have been made to the defendant that it pay to the plaintiff the above amount, and defendant has, and still does, refuse to pay the above amount, or any part thereof, and the same still remains due and unpaid. Wherefore, the plaintiff prays judgment against the defendant:
"1. For the sum of $1,875, together with interest thereon from 17 March, 1928, until paid. *Page 738 
"2. For the costs of this action, to be taxed by the clerk of the Superior Court.
"3. For such other and further relief as to the court may seem just and proper and to which he may be entitled in the premises."
This action was instituted on 8 January, 1931, and on Monday, 23 February, 1931, a judgment by default final was entered in favor of plaintiff against the defendant for the sum sued for in the complaint. On 4 April, 1932, through their attorneys, the defendant entered a special appearance and filed a petition and motion to set aside and vacate the judgment and recall execution: "The Grand Lodge of the Brotherhood of Railroad Trainmen, defendant above named, through its attorneys, McLendon 
Covington, enters a special appearance in the above entitled cause and petitions the court to vacate and set aside the default judgment entered in this cause on 23 February, 1931, and to recall the execution issued on 3 March, 1932, and in support of said motion says and alleges," etc. (setting forth the reasons).
The judgment and findings of fact by the court below are as follows: "This cause coming on to be heard at the June Term, 1932, of the Superior Court of Anson County, and being heard upon motion of Messrs. McLendon 
Covington under the style of a special appearance to vacate a judgment hereinbefore rendered by the clerk of the Superior Court of Anson County of date of Monday, 23 February, 1931, which judgment was a judgment by default final on account of the failure of the defendant to file an answer, and being heard, the court thereupon, after hearing the reading of the pleadings and affidavits submitted and on file and the evidence of W. E. McNair, sheriff of Richmond County, which is made a part of the findings of fact of the court, and the argument of counsel, the court finds the following facts:
"1. That the plaintiff, Samuel C. Winchester, was an employee of the Seaboard Air Line Railroad Company and as such employee became a member of the Brotherhood of Railroad Trainmen, and in the course of said membership had issued to him on 21 May, 1926, a beneficiary certificate or policy of insurance, No. C-437525, which is hereto attached and made a part of the findings of fact by the court, and is transmitted for the information of the Supreme Court.
"2. That said policy above referred to appears to have been signed in pen and ink by B. W. Snyder, at one place listed as secretary and at another place listed as treasurer, and thus signed with pen and ink, together with such other statements thereon regarding the Monroe Lodge, No. 643, and the name of Samuel C. Winchester and the proper signature of Samuel C. Winchester, the assured, appear to be the only signatures in pen and ink, the officers of the Grand Lodge having had their names printed on the policy when it was made out in blank; *Page 739 
"3. That said policy was in due course of business delivered to and became the property and was in the possession of the assured, Samuel C. Winchester.
"4. That the court finds as a fact from the evidence submitted that the Brotherhood of Railroad Trainmen is not incorporated, but is a fraternal, beneficiary association, of which plaintiff was a member.
"5. That the motion made by the defendant through its counsel, Messrs. McLendon Covington, is to set aside the judgment for failure of service of summons and is a motion in the original cause which is admitted by counsel for plaintiff and defendant to be proper, the original of which was made before the clerk of the Superior Court of Anson County, and was heard and passed upon by said clerk on 18 April, 1932, and from such findings of fact as made by the clerk and his judgment thereon the defendant appealed to the Superior Court in term;
"6. That on 8 January, 1931, summons issued out of the Superior Court of Anson County entitled as herein, and said summons was, on 17 January, 1931, served by W. E. McNair, sheriff of Richmond County, on W. D. Pait, the service appearing as follows: `By reading the within summons to W. D. Pait, the secretary-treasurer of Shakespeare Lodge, 794, Hamlet, N.C. of the Grand Lodge of Brotherhood of Railroad Trainmen and by delivering to him as an officer of the defendant a copy of the within summons, together with copy of the verified complaint in this action.'
"7. That the court finds as a fact from the evidence offered in the testimony of Sheriff McNair that the sheriff was then unaware, and so states, that he is now unaware as to whether or not W. D. Pait was an officer of the defendant.
"8. And the court finds as a fact that the Grand Lodge of the Brotherhood of Railroad Trainmen is an association or organization of railway men of America, with its principal place of business in the city of Cleveland, Ohio, and that in the conducting of its business it has subordinate lodges or orders located over the entire United States.
"9. That it has one subordinate lodge located in the city of Salisbury, in the county of Rowan, and another located in the city of Hamlet in Richmond County, and that at the time the plaintiff became a member of the defendant organization, the defendant had and maintained a subordinate lodge in the city of Monroe in Union County, but that the Monroe lodge is now and has been for some years disbanded, and at the time of the institution of this action herein was not existing.
"10. The court finds as a fact that W. D. Pait is secretary-treasurer of the Shakespeare Lodge, 794, Hamlet, N.C. and was on 17 January *Page 740 
such secretary and treasurer, and that as such secretary and treasurer the said W. D. Pait countersigned policies like the one introduced in evidence in this hearing as secretary and treasurer, signed at two identical places on said policy, and that he delivered said policy to the assureds and received from them such payments, if any, as were demanded by the Grand Lodge of Brotherhood of Railroad Trainmen, and thereafter and subsequently collected such dues as were due to be collected by him under said policies and from said membership, and in turn remitted said amounts received to the defendant at its principal place of business in the city of Cleveland, Ohio, as aforesaid.
"11. The court further finds as a fact that at some time subsequent to the service of the summons on the defendant W. D. Pait, as aforesaid, and which was, to wit, 17 January, 1931, that a copy of the summons together with a copy of the complaint filed in the cause was produced from among the personal effects of the said W. D. Pait and that said copy of summons and complaint is on exhibition before the court through counsel representing the defendant in this investigation, but the copy of the summons does not bear the date as set down as served by the sheriff, neither does it bear the signature of the sheriff, but does have filled therein the name of W. D. Pait in the handwriting of the sheriff of Richmond County.
"12. And the court finds as a fact that counsel for the plaintiff received in the due course of mail a letter from Hon. Dan C. Boney, Insurance Commissioner of the State of North Carolina, which letter is made a part of these findings of fact and is incorporated herein for information.
"13. The court further finds as a fact from a certified copy of the record in the case of Welch v. Brotherhood of Railroad Trainmen, reported in 200 N.C. on page 184, that summons served upon the defendant was in the following words: `Grand Lodge of Brotherhood of Railroad Trainmen, B. W. Snyder, secretary and treasurer,' and that said summons in that case has the following service appearing thereon: `By reading and delivering copy of summons together with copy of complaint to B. W. Snyder, secretary and treasurer of the Grand Lodge of Brotherhood of Railroad Trainmen,' and is signed by the sheriff of Union County, and that the defendant under such service thereupon came into court, filed answer and made contest to the controversy.
"14. The court further finds as a fact that the defendant company, acting by and through its subordinate lodges in North Carolina, has come into the State and is doing business therein, and that it is not licensed as such as provided by law if such license should be necessary *Page 741 
and mandatory under the statutes and in pursuance of its doing business in North Carolina it maintains the aforesaid subordinate lodges and has over a period of years issued insurance policies as herein and otherwise to different members of these organizations and has collected thereon by way of dues and assessments considerable sums of money under the policies hereinbefore issued to its members, and that it is now and has been and will continue to do business as above within the boundaries of the State of North Carolina;
"15. That moneys collected by W. D. Pait as aforesaid are deposited by him in the Page Trust Company at Hamlet, N.C. and that in turn portions of such funds as theretofore deposited are forwarded to the Grand Lodge at its principal office in Cleveland, Ohio, such being the amounts as due to the Grand Lodge;
"16. The court finds as a fact that the defendant filed no answer, and that on 23 February, 1931, under the statute prevailing in North Carolina, the plaintiff was entitled to judgment final under his complaint filed in this cause, and that said judgment was regular.
"17. That the constitution and general rules of the Grand Lodge of Brotherhood of Railroad Trainmen for subordinate bodies, at pages 119-120, makes provision to the effect that the treasurer of subordinate lodges shall collect the dues and insurance premiums from the members in good standing and remit same to their grand treasurer in Cleveland, Ohio.
"18. The court finds as a fact that the summons served on W. D. Pait was in all respects regular and proper and that it imports verity and is found as a fact to have been a proper service of summons on W. D. Pait.
"19. The court is of the opinion that under a motion of this character, not made under section 600, but being a motion made in the original cause, that it is not necessary for the defendant to show a meritorious defense, but the court is of opinion that if a meritorious defense is necessary to be shown from evidence submitted the defendant, had it been permitted to file answer, would have alleged facts and introduced proof to combat the allegations of the plaintiff, indicating a meritorious defense on its part, but the entire point presented by this motion, as the court understands the contending parties, being whether or not service on W. D. Pait as herein set forth is service on the defendant, it being found as a fact that defendant is not an incorporated body.
"20. The court further finds as a fact that the service in this case was in all respects proper and regular, and was such service as would bring the defendant into court, necessitating on its part the filing of an answer and contest of the issuable facts. *Page 742 
"21. It is therefore ordered, adjudged and decreed that the judgment heretofore rendered by the clerk of the Superior Court of Anson County be and it is hereby affirmed, and that said judgment is a valid, outstanding and subsisting judgment, recognized and enforceable by the provisions of the statute of North Carolina.
"22. That defendant maintains no listed process agent in North Carolina, but that W. D. Pait is a proper person on whom process may be served."
The only exception and assignment of error taken was to the final judgment and findings of fact of the court below, denying the defendant's motion to set aside and vacate the default judgment theretofore rendered by the clerk of the Superior Court of Anson County.
The plaintiff, on 25 October, 1932, made a motion in this Court to dismiss the appeal of defendant and that judgment of the lower court be affirmed. Consideration of the motion was continued until the hearing of the cause.
The plaintiff sets forth the following reasons: (1) That no statement of case on appeal has ever been served on or accepted by the plaintiff, appellee, or his counsel, nor has any case on appeal or record been presented to any Superior Court judge to be settled. (2) That, as the plaintiff, appellee, and his counsel are advised, informed and believe, the purported record in the case, which has been presented to the clerk of the Superior Court for Anson County for certification, is not a true, perfect and complete record.
It was contended by plaintiff that the record of the court below discloses that the defendant, appellant, have sixty (60) days within which to make up and serve its case on appeal, and that plaintiff, appellee, have thirty (30) days thereafter to serve countercase or file exceptions. That no statement of case on appeal has been served on plaintiff and no disagreement been presented to the trial judge for settlement. That if the case had been properly made up, certain testimony of witnesses and exhibits would have been set forth bearing on the finding of facts by the court below.
"A motion to dismiss an appeal for noncompliance with the requirements of the statute in perfecting an appeal must be made at or before entering upon the trial of the appeal upon its merits, and such motion will be allowed unless such compliance be shown in the record, or a waiver thereof appear therein, or such compliance is dispensed with by a writing signed by the appellee or his counsel, to that effect, or unless *Page 743 
the court shall allow appropriate amendments." Rule 16, 200 N.C. at p. 821; Pruitt v. Wood, 199 N.C. 788.
"If any part of the affidavits or pleadings is not sent up either party can always move for certiorari to supply the missing part of the record." Rule 34, 200 N.C. at pp. 833-34; Wallace v. Salisbury, 147 N.C. 59.
In S. v. Shipman et al., ante, at p. 327, the record being here, this Court held: "Hence, it becomes our duty to take cognizance of the matter; and this irrespective of how the case is brought before us, whether by appeal, habeas corpus, certiorari, or motion to docket and dismiss appeal.S. v. Satterwhite, 182 N.C. 892; S. v. Beasley, 196 N.C. 797." In theShipman case, supra, the defendants were both fined and imprisoned, whereas for the offense of which they were convicted it was only permissible to impose fine or imprisonment.
The defendant contends that no statement of case on appeal has been prepared or served on the appellee for the reason that only one exception was taken and that was to the final judgment as signed by the court below; that by reference to said judgment in the record it will be seen that the case on appeal was fixed by the court below at the time the appeal entries were made, having stated therein that "The summons, complaint, judgment, motion, affidavits filed and exhibits, policy of insurance, and these findings of fact and conclusions of law shall be and constitute the case on appeal to the Supreme Court." The defendant further says: "The Court's attention is called to finding of fact reading as follows: `But the entire point presented by this motion, as the court understands the contending parties, being whether or not service on W. D. Pait as herein set forth is service on the defendant, it being found as a fact that the defendant is not an incorporated body." Defendant further contends that the plaintiff's contention is not applicable to the facts in the present cause. Wallace v.Salisbury, 147 N.C. 58, and cases cited.
In Comrs. v. Scales, 171 N.C. at p. 525, the following observation is made: "There was a motion to dismiss the appeal, as no case on appeal had been served by the appellant, but we do not think a case was required, as there is only one exception to the judgment, and that was taken at the trial. There are assignments of error, but they all turn upon the one question whether the last judgment was a proper one. No case was necessary to present this question, as it is done by the exception, and, even without it, by the appeal from the judgment." Bessemer Co. v. Hardware Co.,171 N.C. 729; Parker Co. v. Bank, 200 N.C. 441.
In the Parker case, supra, at p. 442, it is said: "As the record contains no statement of case on appeal, we are limited to the question *Page 744 
whether there is error in the judgment, the appeal itself being an exception thereto," citing numerous authorities.
Taking the record as set forth by both sides, it is ambiguous as to the requirements in this particular case. The general principle as set forth by defendant is ordinarily applicable. The motion to dismiss the appeal is overruled.
The record discloses: "The Grand Lodge of the Brotherhood of Railroad Trainmen, appellant in the above entitled action, begs leave to file the following answer in connection with the purported motion which the appellee has indicated he would make before the Court on Tuesday, 25 October, 1932," etc. . . . "The defendant, by his general appearance in the action, waived all defects with respect to service of summons. The statute provides that a voluntary appearance by a defendant is equivalent to personal service of summons. C. S., 490." Reel v. Boyd, 195 N.C. at pp. 273-74; Burton v.Smith, 191 N.C. 599; Abbitt v. Gregory, 195 N.C. at p. 209; Crafford v.Ins. Co., 198 N.C. 269.
We come now to consider the case on its merits: Was the service on W. D. Pait, secretary-treasurer of the Shakespeare Lodge, 794, Hamlet, N.C. a service on defendant, it being found as a fact that the defendant is not an incorporated body? We think so.
N.C. Code of 1931 (Michie), section 6274, is as follows: "Every insurance company, association, or order, as well as every bond, investment, dividend, guarantee, registry, title guarantee, debenture, or such other like company (not strictly an insurance company as defined in the general insurance laws), must be licensed and supervised by the insurance commissioner, and must pay all licenses, taxes, and fees prescribed in the insurance laws of the State for the class of company, association, or order to which it belongs. No provision in any statute, public or private, may relieve any company, association, or order from the supervision prescribed for the class of companies, associations, or orders of like character, or release it from the payment of the licenses, taxes, and fees prescribed for companies, associations, and orders of the same class; and all such special provisions or exemptions are hereby repealed. It is unlawful for the insurance commissioner to grant or issue a license to any company, association, or order, or agent for them, claiming such exemption from supervision by his department and release for the payment of license, fees and taxes."
The "Order of Owls" was an unincorporated fraternal order. The "Home Nest" was South Bend, Ind. It appears that under the constitution these local nests, having the insurance feature of death and sick benefits, were organized in all portions of the country, doing business *Page 745 
under by-laws furnished by the home nest, and in its scheme of government the authority of the home nest seems to be absolute and all-prevailing. Cards were issued setting forth ten "Reasons Why You Should Join the Order of Owls," the first as follows: "Order of Owls has sick and accident benefit of $6 per week." — "Be a Leader" — "Join Now" — "Jolliest and Best Fellows on Earth."
A little "Owl's Nest" was organized in Charlotte, N.C. The agent, J. J. Arlington, did business and paid no license under the insurance law. (C. S., 6274, before it was amended.) He was convicted and on appeal to this Court the conviction was sustained. Hoke, J., speaking for the Court in S.v. Arlington, 157 N.C. at p. 648, says: "Throughout the statute, in sections relevant to the inquiry, the words used are insurance companies, associations, and orders, and clearly contemplates both incorporated and unincorporated companies. This business of insurance and insurance companies has become of such great interest and importance that our statutes, as stated, have made extended regulations for its supervision and control. The department established for the especial purpose, under the direction of its active and capable commissioner, has done much valuable work in the protection of the people of the State, and in cases permitting constructions that interpretation should be adopted which is best promotive of the public policy and beneficent purpose of the law." Robinson v.Brotherhood of Locomotive Firemen and Engineers, 170 N.C. 545.
N.C. Code of 1931 (Michie), section 6274, supra, as it now reads and amended, is taken from Vol. 2, Revisal of 1905, sec. 4691; Laws 1903, ch. 594, secs. 1, 2, 3; Laws 1913, ch. 89, "An act for the regulation and control of fraternal benefit societies." Sec. 1. "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit and having a lodge system with ritualistic form of work and representative form of government, and which shall make provisions for the payment of benefits in accordance with section four hereof, is hereby declared to be a fraternal benefit society." (Vol. 2, C. S., 6497.) Sec. 26, in part, is as follows: "Nothing contained in this act shall be construed to affect or apply to societies which limit their membership to any one hazardous occupation," etc.
This section, 26, supra, is now 6518, Vol. 2 (1919). Public Laws of N.C. 1925, ch. 70, sec. 2, is as follows: "Amend section C. S., 6518, by striking out, in lines three and four, the following: `nor to similar societies which do not issue insurance certificates.'" Since the decision in the Owl case, N.C. Code, 1931 (Michie), section 6274, is the same except *Page 746 
as above amended. The "any one hazardous occupation" applies to trainmen and exempts it from license.
The Insurance Commissioner, writing to plaintiff's attorney on 22 July, 1930, said: "I have your letter of 17 July in regard to the Brotherhood of Railroad Trainmen. This organization is a fraternal relief association that is not subject to the supervision of this department, being specifically exempt under the provisions of C. S., 6518. In view of this, I hold no power of attorney to accept service of process upon them, but assume that valid service can be had upon the secretary of the organization or the Secretary of State under the provisions of C. S., 1137."
From the statutes on the subject, it may be noted that the Insurance Commissioner says "assume that valid service can be had upon the secretaryof the organization." Under findings of fact 13 by the court below in theWelch case, defendant did not make the contention as is now made that the defendant was not properly served. Of course, the Insurance Commissioner's contention and the defendant's conduct in the Welch case are persuasive but not binding. From the findings of fact by the court below, defendant is an organization doing an insurance business in this State and to all intents and purposes a going insurance concern, limited to the Brotherhood of Railroad Trainmen and exempt from license tax under the Laws of 1913.
In Vol. 2, C. S., Art. 25, under the head of Insurance, sub-ch. 6, isFraternal Orders and Societies. Art. 26, Fraternal Benefit Societies. The statute laws of this State recognize "Every insurance company, associationor order." C. S., 6274, "Every incorporated association, order or society." C. S., 6492, "Any corporation, society, order or voluntary association." C. S., 6497. "Societies which limit their membership to any one hazardous occupation." C. S., 6518. It may be noted that the statutory law permits all sorts of unincorporated associations to do certain kinds of insurance business in this State. To be sure they are now exempt from license tax, but are allowed to do business in this State, collect money and issue certain forms of insurance. It would be an anomaly to say that these voluntary unincorporated insurance companies and the one in this case that issues policies of insurance, designated as "Beneficiary Certificates," with all these privileges granted them in this State, are not subject to an action in this State by a member who has complied with the terms and provisions of the beneficiary certificate or insurance policy, and has suffered disability within the terms of the policy.
It would be a travesty on justice to say that the secretary and treasurer of defendant association, who countersigned policies, collected *Page 747 
dues and remitted same to the home office and performed other duties for defendant, that defendant could not be brought into the courts of this State, by service of summons on the secretary and treasurer, as was done in the present action.
In Clark v. Grand Lodge, 328 Mo., 1084 (S.W. Rep., 2d Series, 404). (The facts in the Clark case, supra, are analogous to the instant case and the defendant the same as in the present case.) At p. 1090 we find: "It is apparent, therefore, that the `clear-cut issue' on which defendant rests its demurrer is that the defendant, Grand Lodge of the Brotherhood of Railroad Trainmen, being, as stated in the petition, a voluntary unincorporated association, is not capable of being sued at law, or as defendant asserts, is not a suable entity (p. 1098). Contracts are not contracts unless they are enforceable. To say that an association like defendant can make contracts necessarily means valid contracts — contracts that are binding on the parties and enforceable against them. It is an absurdity to say that defendant can make contracts of insurance, but cannot be sued thereon. If defendant has legal capacity to make a contract of insurance, it has legal capacity to be sued thereon. If it is a legal entity when making such contracts, it retains such legal entity when sued thereon. . . . (p. 1104). We think, also, that the doctrine of estoppel might well be applied to a case like this. This association, having over one hundred thousand members with regularly constituted officers and a perfect working organization, has the appearance, form and method of doing business of a corporation or legal entity. It has chosen a name and does business as a legal entity under and by use of that name. It holds itself out as capable of contracting in that name and by that name does enter into insurance contracts and in that name collects the premiums and accumulates funds to meet such contract obligations. When sued on such contracts in the name which it has used in making same, it ought not to be allowed to say that it is a mere myth — an intangible nonentity, incapable of being sued."
5 Corpus Juris, "Associations," sec. 8, at p. 1336, reads as follows: "One who deals with an association as a legal entity capable of transacting business, and in consequence receives from it money or other things of value, is estopped from denying the legality of its existence." Petty v.Brunswick, etc., R. Co., 109 Ga. 666.
The cases cited by defendant are distinguishable from those unincorporated organizations or insurance companies that issue "Beneficiary Certificates."
In Nelson v. Atlantic Coast Line Ry. Co., Relief Department,147 N.C. 103, it was held that while a suit could not be maintained to *Page 748 
recover insurance against the Relief Department, that being a bureau of the railroad. "If the contract is valid the liability is that of said railroad company." In the other cases relied upon as authority for the doctrine that unincorporated associations, no matter what their nature or business, cannot be sued, the questions involved were distinctly different. In Tuckerv. Eatough, 186 N.C. 505, it was held that an unincorporated foreign association, United Textile Workers of America, could not be sued for an alleged libel by one of its agents in this State. In Citizens Co. v.Typographical Union, 187 N.C. 42, it was held that an injunction would not lie against an association, restraining its members from certain activities. In Jinkins v. Carraway, Trustee of Excelsior Household of Ruth,187 N.C. 405, it was held that mandamus would not lie to compel a fraternal order to reinstate a member. See sec. 248, pp. 232 and 233, N.C. Practice and Procedure in Civil Cases (McIntosh), N.C. Law Review, Vol. 10, p. 313.
In the present case the plaintiff paid his dues regularly out of his monthly earnings, and was not in arrears to defendant's secretary and treasurer, who collected same in this State on his insurance policy or beneficiary certificate, made and delivered in this State. The defendant, an unincorporated organization, under the statute law of this State, was conducting an insurance business and was exempted from paying license. Its beneficiary certificate provided for the payment of $1,875 on the loss of an eye. Plaintiff lost his left eye and on that account had to resign from his position on the railroad, as trainman, as he had become unfit on that account to perform his duty to earn his daily bread. If plaintiff could not sue and have service of process on the secretary and treasurer of defendant company, under the facts and circumstances in this action, he would practically be remediless — a right without a remedy — this was never contemplated by law or equity, or the statute on the subject in this State that allowed defendant to do an insurance business, without paying license. We think the statutes in this State allowing unincorporated organizations or insurance companies to do business without license are enabling statutes. There are no enabling statutes in regard to such unincorporated associations like in the cases cited by defendant. Defendant is in an insurance business or organization and different. There is a "straight line" (an expression by Brogden, J.) between these different kinds of unincorporated associations — one business, the other fraternal or social.
The judgment of the court below is
Affirmed. *Page 749